NO. 5061

Construing S. B. No.24, being an amendment by
the 46th Legislature to Art. 7047e, R. C. S.,
and holding as follows:

1. That said Act is constitutional.

2. That liens taken by State banks are not
   exempt from its provisions.

3. That the exemption contained in the Act
   are valid.

4. That a lien upon an implement is not exempt
   unless and until it becomes devoted to farm-
   ing uses.

5. That the County Clerk is not entitled to 5%
   on amount of tax paid under protest until
   and unless it be found that the tax was
   rightfully collected.

6. Conclusions of the State Treasurer on ques-
   tions concerning the Act are not necessarily
   binding on the County Clerk but occupy a
   persuasive attitude.

7. Expenses of administering said Act can be
   paid by the Treasurer only on warrants of
   the Comptroller.

8. In counties where the County Clerks are on
   a salary basis the 5% commission allowed
   County Clerks under the Act such commiss-
   ion must be placed in the salary fund.

OFFICE OF THE ATTORNEY GENERAL

June 17, 1939

Honorable Charley Lockhart
State Treasurer
Austin, Texas

Dear Sir:                    Attention : Mr. H. Morris Stevens

                             Opinion No. O-758
                             Re: Interpretation of S. B. No.
                                 24, being an amendment by
                                 the present legislature to
                                 Art. 7047e, R.C.S., and rul-
                                 ing upon its constitutional-
                                 ity.

     We have received your letter of May 4, 1939, where-
in you request our opinion in response to the following

"1. Is the Act of the Forty-sixth
Legislature, Regular Session, originating
as Senate Bill No. 24, contrary to the
Constitutions of the State of Texas or
the United States?

"2. Under the amended law are State
banks exempt from the payment of this tax?

"3. Is that portion of subdivision
(a) of the amending statute quoted below
constitutional? Quote: 'nor shall the
provisions of this section apply to obli-
gations or instruments secured by liens on
crops and farm or agricultural products, or
to livestock or farm implements.'

"4. If an indebtedness is secured
primarily by real estate or chattels other
than livestock, farm or agricultural crops
or products, or farm implements, but the
instrument includes any one of these last
mentioned chattels, should the instrument
be exempt from taxation?

"5. Should farm implements be consid-
ered as such before they are used for that
purpose? In explanation, when tractors, com-
bines, and other similar machines are sold by
the manufacturer to a dealer under condition-
al sales contract, should such machinery be
considered 'farm machiner', thereby exempt-
ing the instrument from taxation?

"6. When a payment of the tax is made
under protest, should the County Clerk sell-
ing the stamps that evidence such payment be
allowed the 5% commission?

"7. The act states, 'The State Treasurer
shall assist the County Clerks of the State in
determining what instruments are subject to the
tax provided in this Act.' Under this portion
of the statute, are the conclusions of the
Treasurer on general or specific questions,
either or both, binding on the County Clerks
in the enforcement of the payment of this tax?

"8. The amended statute states 'The
State Treasurer shall from time to time de-
duct enough money from the proceeds received
from the sale of stamps to pay for the print-
ing of said stamps, and the mailing of said
stamps to the County Clerks, said money to be
deducted by the State Treasurer before allocat-
ing the funds received from the sale of said
stamps.' Article 4371, R.C.S., states 'No money
shall be paid out of the Treasury except on
the warrants of the Comptroller.' Does this
portion of the statute create a fund whereby
the Treasurer can deduct such funds for ex-
pense items, and also allow the Comptroller
to write warrants for the purpose of paying
any expense items arising from the printing
of the stamps and mailing the stamps to the
County Clerks?

"9. Shall the 5% commission allowed the
County Clerks revert to the county salary fund
in counties where such officer is on a salary
basis, or should the County Clerk be allowed
to retain this commission as additional compen-
sation?"

Section 9a of said Act reads as follows:

"Except as herein otherwise provided
there is hereby levied and assessed a tax
of Ten (10¢) Cents on each One Hundred
($100.00) Dollars or fraction thereof,
over the first Two Hundred ($200.00) Dol-
lars, on all notes and obligations secured
by chattel mortgage, deed of trust, mechan-
ic's lien contract, vendor's lien, condi-
tional sales contract and all instruments
of a similar nature which are filed or re-
corded in the office of the County Clerk
under the Registration Laws of this State;
provided that no tax shall be levied on in-
struments securing an amount of Two Hundred
($200.00) Dollars, or less. After the ef-
fective date of this Act, except as herein-
after provided, no such instrument shall be
filed or recorded by any County Clerk in
this State until there has been affixed to
such instrument stamps in accordance with
the provisions of this section; providing
further that should the instrument filed in
the office of the County Clerk be security
of an obligation that has property pledged
as security in a State or States other than
Texas, the tax shall be based upon the
reasonable cash value of all property pledged
in Texas in the proportion that said property
in Texas bears to the total value of the pro-
perty securing the obligation; and, providing
further that, except as to renewals or exten-
sions of accrued interest, the provisions of
this section shall not apply to instruments
given in renewal or extensions of instruments
theretofore stamped under the provisions of
this Act or the one amended hereby, and shall
not apply to instruments given in the refund-
ing of existing bonds or obligations where the
preceding instrument of security was stamped
in accordance with this Act or the one  amended
hereby; provided further that the tax levied
in this Act shall apply to only one instrument,
the one of the greatest denomination, where
several instruments are contemporaneously exe-
cuted to secure one obligation; and provided
further that when once stamped as provided
herein, an instrument may be recorded in any
number of counties in this State without again
being so stamped.  This section shall not ap-
ply to instruments, notes, or other obligations
taken by or on behalf of the United States, or
of the State of Texas or any corporate agency
or instrumentality of the United States, or of
the State of Texas in carrying out a govern-
mental purpose as expressed in any Act of Con-

gress of the United States or of the Legisla-
ture of the State of Texas, nor shall the pro-
visions of this section apply to obligations
or instruments secured by liens on crops and
farm or agricultural products, or to live-
stock or farm implements, or an abstract of
judgment.

"If the amount secured by an instrument
is not expressed therein, or if any part of
the security described in any such instru-
ment appears to be located without the State
of Texas, the County Clerk shall require
proof by written affidavits of such facts as
may be necessary to determine the amount of
the tax due.".

We shall first address ourselves to your third ques-
tion. Article 8, Section 1, of the Constitution of Texas re-
quires that "taxation shall be equal and uniform. All proper-
ty in this State whether owned by natural persons or corpora-
tions other than municipal shall be taxed in proportion to its
value which shall be ascertained as may be provided by law."
Article 8, Section 2 of the Constitution of Texas provides
that "all occupation taxes shall be equal and uniform upon
the same class of subjects within the limits of the authority
levying the tax." After providing for certain exemptions,
said Section 2 of Article 8 concludes as follows: "And all
law exempting property from taxation other than the property
above mentioned shall be null and void."

Article 1, Section 3 of the State Constitution reads
as follows:

"All free men, when they form a social
compact, have equal rights, and no man, or
set of men, is entitled to exclusive separ-
ate public emoluments, or privileges, but
in consideration of public services."

It is provided in said Act that it shall not apply
to "obligations or instruments secured by liens on crops and
farm or agricultural products or to livestock or farm imple-
ments." The question thus presented is whether the exempt-
ion of liens upon crops and farm or agricultural products and
livestock and farm implements is violative of any or all of
the above constitutional provisions.

The exemption in effect constitutes a classification
for taxation purposes. As affecting the power of the legisla-
ture to make such classification we become concerned with the
question as to whether this tax is one upon property or is a
privilege or excise tax. In some respects it must be admit-
ted that it smacks of a property tax, particularly at the be-
ginning, when it provides that "there is hereby levied and
assessed a tax of ten cents on each One Hundred Dollars or
fraction thereof, over the first Two Hundred Dollars, on
all notes and obligations secured by . . ." However, it con-
tains other attributes of a privilege or excise tax. In 4
Cooley on Taxation, 4th Ed. 3379, it is said that "stamp
taxes are a form of excise tax. They are generally imposed
by the Federal Government although they may be imposed by a
state." Even the Supreme Court of the United States in
Thomas v. United States, 192 U. S. 363, 48 L. Ed. 481, 24
S. Ct. 305, said that "Stamp taxes ordinarily are excise taxes.".

In this Act the tax is collected only through the sale of stamps. There is no occasion for the purchase of such stamps unless a person desires to avail himself of the use of the public records. Then the stamp is placed upon the mortgage, as evidence of the right to record, rather than upon the obligation secured. Furthermore, when a part of the property forming the security is located without the State, the Act provides for an apportionment of the tax in proportion, evidencing an intent on the part of the legislature to make the tax proportionate to the value received from the use of the records of this State. If this were a tax upon the note secured, such an apportionment would be hard to explain. The Act specifically provides that one stamping shall be sufficient to entitle an instrument to be recorded in any number of counties in the state, a provision which would be entirely useless if the tax were upon the note secured. In support of the position that it is a privilege tax, we cite Middendorf v. Goodale, 259 S. W. 59, Ky. Furthermore, we believe that this construction should be given the Act in aid of its constitutionality.

Beyond question, the Legislature has the power to make classifications in determining what shall be and what shall not be taxed. About the only limitation on this power is that the same shall not be exercised capriciously and arbitrarily. As said in Cooley on Taxation, vol. 1, 4th ed., "A particular classification is proper where based on a reason and not purely arbitrary. There must be a reason for the classification as distinguished from mere accidents, whim, caprice or vindictiveness. Clear and hostile discriminations cannot be made under the guise of classification. A discrimination is not arbitrary of course where based on sound reasons of public policy. On the other hand, while there must be a reason for the classification, the reason need not be a good one and it is immaterial that the statute is unjust. The test is not wisdom but good faith in the classification." pp. 712-714. "The Legislature has a broad discretion in the matter of classification." p. 715. "Classification for taxation is not reviewable by the courts unless palpably arbitrary. It is no concern of the court whether the classification is the wisest or the best that could be made. The classification need not be reasonable and proper according to the judgment of reviewing judges but the court must be able to see that the legislators could regard it as reasonable and proper without doing violence to common sense." p. 716. "Difference in the use of properties as well as inherent differences in the kind of properties may be the basis of classification." p. 717. 61 C. J. 126; 12 C. J. 1153; Cooley on Taxation, 4th ed., vol. 1, pp. 712-714, 715, 716; City of Houston v. Baker, 178 S. W. 820; Weatherly Ind. School Dist. v. Hughes, 41 S. W. (2) 445; Texas Co. v. Stephens, 103 S. W. 481; 40 Tex. Jur. 53-54.

In the case of Louisville Gas & Electric Co. v. Coleman, 277 U. S. 32, 48 S. Ct. 423, the Kentucky stamp statute was under attack because of claimed discrimination in allowing certain exemptions, viz: (1) it did not apply to instruments maturing in less than five years, and (2) mortgages to building and loan associations were exempted. The Supreme Court followed the Kentucky Court of Appeals in Middendorf v. Goodale, 259 S. W. 59, and held that the exemption of building and loan association mortgages was a valid one. However, in a five to four decision it held that the statute was unconstitutional on the first ground urged, that is, that the levying of the tax upon the recording of instruments maturing more than five years, while exempting those maturing in

less than five years, was an arbitrary distinction. Mr. Justice Sutherland wrote the majority opinion. Justices Holmes, Brandeis, Sanford and Stone dissented.

From the dissenting opinion of Justice Holmes, we quote:

"There is a plain distinction between large loans secured by negotiable bonds and mortgages that easily escape taxation, and small ones to needy borrowers for which they give their personal note for a short term and a mortgage of their house. I hardly think it would be denied that the large transactions of the money market reasonably may be subjected to a tax from which small ones for private need are exempted. The Legislature of Kentucky after careful consideration has decided that the distinction is clearly marked when the loan is for so long a term as five years. Whatever doubt I may feel, I certainly cannot say that it is wrong. * * *"

From the dissenting opinion written by Justice Brandeis, we quote:

"The statute discriminates between long and short term loans as subjects of taxation. A loan maturing in 60 months or more would be subject to the tax, whereas one maturing in 59 months or less, but otherwise similar in all respects would not be. The distinction between long-term and short-term loans -- with differences in yield for securities otherwise identical in character -- iw one familiar to American investment bankers and their clients. Did the Kentucky Legislature, in adopting that classification for purposes of the mortgage recording tax, exceed the bounds of that 'wide discretion in selecting the subjects of taxation' which this court sanctions, as declared in Lake Superior Mines v. Lord, 271 U. S. 577, 582, 46 S. Ct. 627 (70 L. Ed. 1093), so long as the state 'refrains from clear and hostile discrimination against particular persons or classes'?

"Classifications based solely on factual differences no greater than that between a loan maturing in 59 months or less and one maturing in 60 months or more, have been sustained in many fields of legislation. In Citizens' Telephone Co. v. Fuller, 229 U. S. 322, 329, 33 S. Ct. 833, 57 L. Ed. 1206, it was said that in taxation there is a broader power of classification than in some other exercise of legislation". * * *

"Because the long-term loans are commonly represented by negotiable coupon bonds and are secured by a deed of trust, registration does not disclose to the assessors who the holders of the securities

are, and they frequently escape taxation
thereon. Laying the mortgage recording
tax only upon the long-term loans tends in
some measure to reduce the disadvantage un-
der which the short-term borrower labors.

"At what point the line should be
drawn between short-term and long-term
loans is, of course, a matter of which
even men conversant with all the facts
may reasonably differ. There was much
difference of opinion concerning this
in the Kentucky Legislature. The bill,
as recommended by the tax commission,
and as introduced in the House, exempted
from the tax here in question only such
mortgages as secured indebtedness matur-
ing within three years; and it imposed a
tax of 25 cents for $100. In the House
the bill was amended so as to exempt
loans maturing in less than five years.
In the Senate, the House bill was amended
so as to reduce the period to three years.
The House refused to concur in the Senate
amendment. The Senate receded; and there-
upon the bill was passed granting the ex-
emption of loans maturing within five years,
but with the rate reduced to 20 cents. Thus
we know that in making this particular
classification there was in fact an exer-
cise of legislative judgment and discretion.
Surely the particular classification was not
such as to preclude (in law) 'the assumption
that (it) was made in the exercise of legis-
lative judgment and discretion.' See Steb-
bins v. Riley, 268 U. S. 137, 143, 45 S. Ct.
424, 426 (69 L. Ed. 884, 44 A.L.R. 1454).
Whether the exercise was a wise one is not
our concern.

"That it was permissible for Kentucky,
in levying its mortgage recording tax, to
take account of the probability that cer-
tain types of mortgage would escape further
taxation, is not open to doubt. Watson v.
State Comptroller, 254 U. S. 122, 125, 41
S. Ct. 43, 65 L. Ed. 170. There is abun-
dant proof that the Legislature was justi-
fied in thinking that the bulk of the long-
term loans would escape the general property
tax, while most of those for a short-term
would not. That the statute taxes certain
long-term loans which, because of their simi-
larity in other respects to those for a short-
term, are likely to be subjected to the state
property tax, would not render the statute in-
valid even as applied to them. Compare Citi-
zens' Telephone Co. v. Fuller, 229 U. S. 322,
332, 33 S. Ct. 833, 57 L. Ed. 1206. Wherever
the line might be drawn, the statute would
sometimes operate unjustly. But such occas-
ional instances of injustice would not render
the classification arbitrary. * * *"

In view of the change in the personnel and temper
of the Supreme Court, it is not at all improbable that if
the case of Louisville Gas & Electric Co. v. Coleman, supra,

had not been presented until now, Justice Brandeis' opinion would be that of the majority and Justice Sutherland's opinion the dissenting one. See also, Hurt vs. Cooper, 110 S.W. (2d) 896, State vs. Standard Oil Co., 107 S. W. (2d) 550, Gerald vs. Smith, 52 S. W. (2d) 347.

To hold the exemption in the present statute unconstitutional would be to strike down the whole statute in our opinion. For, to erase the exemption would be to swell the taxed instruments to an extent quite plainly never intended and give the statute to a meaning never intended by the Legislature. The exemption proviso cannot be severed without at the same time greatly affecting the meaning of the statute as a whole. We do not believe the language of Section 2 would save the statute if the exemption be denied. 59 C. J. 647-8; Daniel v. Larsen, 12 S. W. (2) 386, Tenn.; 6 R. C. L. 129; Bexar Co. v. Linden, 295 S. W. 476, at p. 482.

This statute has been passed by the Legislature and signed by the Governor. We are not prepared to say as a matter of law that the Legislature acted arbitrarily and capriciously in making the classification, that it had no ground whatsoever for making the distinction, and that the Act is void. Every reasonable intendment should be indulged in favor of the constitutionality of the Act. Perhaps, the Legislature saw a reason for exempting mortgages from the tax when the security is so close to the source of raw materials for both food and clothing; or, that the security forming the basis for the exemption is fragile, rendering the use of the records less valuable; or, that the security is of such a nature that loans thereon are made for shorter periods as a general rule than other loans, causing the use of the records to be of less value.

We have not overlooked such cases as Lossing v. Hughes, 244 S. W. 556; Ex parte Faison, 248 S. W. 343; Southern Package Corp. v. State Tax Com., 164 So.45, Miss., and are mindful of the seriousness of the question presented by the above classification. However, the presumptions are in favor of the reasonableness of the classification, and the constitutionality of the Act. We answer your third question in the affirmative and the first in the negative.

We know of no governmental purpose as expressed in the Acts of the Legislature of this State being carried out by state banks. The fact that they are incorporated under the laws of Texas does not make them state agencies. We answer your second question in the negative.

Exemptions are to be strictly construed. Our answer to your fourth question is in the negative. There could be no ground whatsoever for a classification which would require the payment of a tax upon the recordation of a mortgage upon $10,000.00 worth of automobiles; and at the same time exempt a companion mortgage upon $10,000.00 worth of automobiles and $1,000.00 worth of cultivators and planters.

In effect your fifth question asks whether a mortgage upon implements would be entitled to the exemption when such implements have never passed into the hands of one who is using or will use the same for farming purposes. Exemptions must be strictly construed, and one who claims the benefit of an exemption in a taxing bill must bring himself clearly within the exemption. In our opinion, the exemption of farm implements was intended to apply to implements used for

farming purposes, and was never intended to apply to an implement which had never come into the hands of a person who would devote it to a farming purpose. The exemption is manifestly intended as an aid to a suffering and vital industry. No such aid would be extended by favoring a lien on an implement which may never be sold, or, even if sold, never put to an agricultural use. If devoted to such a use, a mortgage upon it would be exempt from the tax, whether the owner and mortgagor is a farmer or a professional or business man having farming interests. The Clerk is the tax collector under this Act. The burden would be upon a person claiming the exemption to satisfy the Clerk that he is entitled thereto.

The Act provides that County Clerks shall be entitled to retain as fees of office for handling such stamps 5% of the amount of money received from the sale of such stamps, provided such fee for any one calendar month shall not exceed one hundred dollars, said 5% to be retained by the County Clerk when remitting to the State Treasurer. The sale of the stamps is only a step in the collection of the tax. If the money is placed in suspense, and it should subsequently develop that the tax was not due, and that the placing of the stamps on the instrument was not necessary, then the party paying the tax and placing the stamps on the document would be entitled to recover the full amount back. In such an event there has been no sale of the stamps within contemplation of the statute. The state has not effectually received the money for the stamps until it has been taken from the suspense account and delivered to the State for state purposes. Our answer to your sixth question, therefore, is that the County Clerk should not be allowed the 5% commission for selling the stamps until the sale has become final; that is, until it has been definitely determined that the money does not belong in the suspense account but will go into the general treasury.

The Act provides that "the State Treasurer shall assist the County Clerks of the State in determining what instruments are subject to the tax as provided in this Act." Our answer to your seventh question is that the conclusions of the treasurer on such would not be conclusive but would occupy only a persuasive attitude. Our answer to that question is therefore in the negative.

Addressing ourselves to your eighth question, we would point out that Article 4371, R. C. S., provides that "no money shall be paid out of the treasury except on the warrants of the Comptroller." It is our opinion that H. B. No. 24 and the above Article 4371 would be construed together so as to give effect to both of them. That part of S. B. No. 24 providing that the State Treasurer "shall from time to time deduct enough money from the proceeds received from the sale of stamps to pay for the printing of said stamps and the mailing of said stamps to the County Clerks, said money to be deducted by the State Treasurer before allocating the funds received from the sale of said stamps", means that the printing and mailing of said stamps shall be financed upon warrants drawn by the Comptroller and the amount thereof shall be deducted from the proceeds received from the sale of stamps and after such deduction the balance shall be allocated to its ultimate sources.

With reference to your ninth question, we beg to advise that the 5% commission allowed the County Clerk

would necessarily go into the salary fund in those counties where the County Clerk is paid on a salary basis. Article 3912e, Sections 1 and 3, R. C. S.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By    /s/   Glenn R. Lewis
Assistant

GRL-MR

This opinion has been considered in conference, approved and hereby ordered recorded.

/s/   GERALD C. MANN
ATTORNEY GENERAL OF TEXAS